Menzo W. Finn *vs.* Joseph S. Clark.

If goods are sent by a carrier, and neither the bill of lading nor the direction upon the goods gives the residence or full name of the purchaser, and they are delayed in the transmission and finally destroyed, the purchaser, in an action to recover back the price paid by him to the vendor for the same, may prove prior purchases of similar goods by him of the same vendor, all of which were sent by the same carrier, with bills of lading containing his full name and residence, and reached him without difficulty.

So if the purchaser received by mail a bill of lading of the lost goods, which did not give his residence or full name, he may testify that he did not notice the omission till after they were destroyed; and his omission to complain to the vendor of the mode in which they were forwarded is immaterial.

In an action to recover back the price paid by a purchaser to the vendor of goods, which have been forwarded by a carrier and lost in consequence of a failure to put his name or residence upon them or in the bill of lading, the judge instructed the jury that the vendor might remedy his omission of duty in this respect by giving subsequent information to the carrier, and also furnishing to the purchaser vouchers to show that he was entitled to the goods, provided such vouchers were accepted by the purchaser as sufficient, and upon

receiving them he undertook to see to the forwarding of the goods, without further service from the vendor; and that both information to the carrier and sufficient vouchers for the defendant were necessary, in order to put the carrier and the purchaser in the position in which they would have been if there had been no failure of legal obligation by the vendor. *Held,* that the vendor had no ground of exception.

If goods sent by a carrier have been delayed in the transmission in consequence of the vendor's failure to put the purchaser's name or residence upon them or in the bill of lading, and are finally destroyed before reaching the purchaser, his claiming the goods as his own, and endeavoring to have them forwarded to him, after knowledge of the vendor's failure to direct them properly, will not amount to a waiver thereof, unless he intended to waive the same.

CONTRACT brought to recover the price of certain shingles sold and delivered. One defence was a claim by way of set-off, for money paid by the defendant to the plaintiff upon a draft for the price of another lot of shingles which the defendant never received.

At the second trial in the superior court, before *Brigham,* J., after the decision reported in 10 Allen, 479, there was evidence tending to show that in May 1861 the defendant lived in Southampton, Massachusetts, and ordered a lot of shingles from the plaintiff by a letter addressed to him at Olean, New York, where the plaintiff lived. He afterwards received from the plaintiff a letter dated at Olean, May 13th 1861, inclosing a bill and a bill of lading of the shingles, which, the letter said, were " shipped you this day, as per your order." The former contained a charge for freight paid on the shingles to Greenbush, and for paying boatmen to tow across the river at Greenbush. The latter is given in full in 10 Allen, 480; and showed that the shingles were marked " J. S. C.," without the defendant's whole name or his residence. The plaintiff drew a draft payable in twenty days from May 13th on the defendant for the price, after deducting certain credits, and the defendant accepted the draft May 21st, and paid it at maturity. The shingles reached Greenbush by canal about the 1st of June, and were delivered to the Western Railroad Corporation, and remained in their possession till the 5th of July 1861, when they were destroyed by fire at the time of the burning of the freight depot of that company at Greenbush.

In May and June 1861 the defendant made constant inquiry

for these shingles at the railroad depot in Westfield, (adjoining Southampton,) where he received his letters, and wrote three times to the agent of the Western Railroad Corporation at Greenbush, inquiring if they had arrived there, but received no information respecting them until after the fire. The, defendant also wrote to the plaintiff, referring to the shingles, and saying, " The shingles on the road will last me until winter. I shall make nothing on them." He made no complaint to the plaintiff, or claim upon him, until called on for payment of the bill now in suit, which was dated in May 1862. After the shingles were burned, he attempted to procure evidence and consulted counsel, with a view to claim indemnity of the Western Railroad Corporation for the loss.

The defendant, being put upon the stand as a witness in his own favor, was allowed to testify, against the plaintiff's objection, that he first saw the plaintiff at Olean in 1858, and then purchased of him a lot of shingles, which were marked with the defendant's name, by his direction ; that there was talk of future purchases, and the plaintiff said he could furnish the defendant with such lumber and shingles as might be ordered ; that the defendant afterwards ordered by letter six other lots of shingles and lumber, prior to May 1861, all of which were duly received by him, without difficulty, at Southampton, marked with his name, together with six bills of lading all giving his name and residence ; and these bills of lading were put into the case. And the defendant was also allowed to testify, under objection, that he did not notice the omission of any consignee's name in the bill of lading of May 13th 1861, before the shingles were burned.

The plaintiff was also a witness, and was asked if he ever received any letter complaining of the mode in which these shingles, were shipped and forwarded; but the evidence was excluded.

The judge gave the following amongst other instructions to the jury :

" If the plaintiff having received notice, after the shipment of the shingles, of his failure in the matter of the shipment to do

as he was legally obliged under his undertaking to do, he might provide a remedy for this failure, which, if seasonable, would relieve him from the burden of the subsequent loss of the shingles. So far as this failure left the Western Railroad Corporation without sufficient notice of the consignee and destination of the shingles, he could provide a remedy for it by seasonably notifying the corporation and supplying them with the necessary and usual information to enable them to forward the shingles from Greenbush to Westfield. So far as this failure left the defendant without sufficient and customary vouchers to show that he was entitled to the delivery of the shingles when forwarded to Westfield, he could provide a remedy for it by seasonably furnishing such vouchers ; provided such vouchers were accepted by the defendant as and for a sufficient bill of lading, &c., and upon receiving them he undertook the forwarding of the shingles from Greenbu h, not looking to or expecting any further service from the plaintiff in the matter of forwarding the shingles. Both sufficient notice and information to the corporation and sufficient vouchers for the defendant were necessary, in order to put the corporation and the defendant in the position in which they would have been, if there had been no failure of legal obligation by the plaintiff such as was alleged."

At the request of the plaintiff's counsel, the judge instructed the jury, that " if the shingles were not properly shipped because the bill of lading did not contain the name of the consignee, yet if Clark with actual knowledge of the omission, knew that the shingles were at Greenbush, claimed them as his own, and intended to assert his title and did so, by acts and declarations, the jury may find that Clark assented to the change in the mode of shipment, and such assent constituted a ratification of the original mode of shipment, and the defendant cannot recover." The judge added to this the following instructions : " If the conduct, declarations, omissions and correspondence of the defendant, together with the circumstances and probabilities involved in the facts proved in the case, reasonably explained, indicate that the defendant knew the alleged insufficiency in the acts of the plaintiff, and intelligently acquiesced in the same, and

treated the same as having no relation to the loss of the shin-gles, the defendant may be presumed to have ratified all the acts of the plaintiff, and to have waived any right to claim of the plaintiff on the ground of the irregularity of these acts."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. G. Bates & M. B. Whitney,* for the plaintiff.

*H. B. Stevens,* for the defendant.

CHAPMAN, J. · This case has once been before the court, and now comes up again upon several new questions which have been raised. The court are of opinion that the instructions given to the jury on the second trial were sufficiently accurate and particular.

The evidence offered as to prior purchases of shingles, and the method of sending them to the defendant, was admissible, because it tended to show what the parties intended and agreed their course of dealing should be in respect to particulars that were not made the subject of express stipulation in the subsequent purchases.

So the evidence that former lots of shingles came without difficulty tended to show that the omission of the plaintiff to mark the shingles in question in this case, and to have a proper bill of lading made, caused their detention.

The testimony of the defendant as to his ignorance of the plaintiff's omission of his name on the bill of lading till it was too late to remedy the defect was also admissible; for his ignorance of the fact would be an excuse for omitting to do what he ought otherwise to have done. The question whether any complaint had been made to the plaintiff as to his mode of forwarding the shingles in question was immaterial.

*Exceptions overruled.*